IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE NISSAN NORTH AMERICA, INC. | ) | |
| ODOMETER LITIGATION | ) | MDL Docket No. 3:08-md-1921 |
| | ) | ALL CASES |
| | ) | Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment as to the Odometer Act claim filed by defendants Nissan North America, Inc. and Nissan Motor Co., Ltd. (Docket No. 85), to which the plaintiffs have filed a response (Docket No. 98), and in support of which the defendants have filed a reply (Docket No. 107). Also pending is the Motion to Disqualify filed by the plaintiffs (Docket No. 101), to which the defendants have filed a response (Docket No. 111). For the reasons discussed below, the defendants' motion will be granted and the plaintiffs' motion will be denied.

## FACTS

The defendants (collectively, "Nissan") design, manufacture, market, and sell Nissan- and Infiniti-brand automobiles.[1] The named plaintiffs in this multidistrict litigation are residents of California, Texas, and Pennsylvania who own vehicles manufactured by the defendants. The plaintiffs have filed a Consolidated Amended Class Action Complaint (Docket No. 26), and their

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of facts (Docket Nos. 90, 100), the responses thereto, and related exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

claims center on the allegation that the odometers in their vehicles purposely over-register the number of miles traveled. This, in turn, has allegedly caused the manufacturer's warranties to expire sooner than they otherwise would.

The plaintiffs seek to represent one nationwide class and several state-specific classes of people who have purchased new Nissan or Infiniti vehicles. They have asserted a number of state-law claims, including claims for fraud, breach of warranty, and unjust enrichment, all of which survived the defendants' Motion to Dismiss. (*See* Docket No. 54 at 14-33.) The plaintiffs also claim that the defendants have violated the federal Odometer Act, 49 U.S.C. § 32701 *et seq*. The Odometer Act claim is the only claim at issue in the instant motion.

An odometer monitors the rotation of the vehicle's wheels and uses that information to calculate and display the distance that the vehicle has traveled. The number of wheel revolutions, multiplied by the tire's circumference, yields the distance traveled. The actual circumference of the tire changes during driving, however, based on factors that include vehicle speed, tire pressure, vehicle load, and variations in tire manufacturing. This necessarily introduces some level of variability into odometer performance.[2]

The named plaintiffs' vehicles employ one of three types of odometer systems: (1) a transmission speed sensor ("TSS") system; (2) an anti-lock braking system controller area network ("ABS CAN") system; or (3) a hybrid ABS system.[3] The basic facts regarding the

---

[2] The standard for odometer tolerance, or variability from the actual mileage traveled, set by the Society of Automotive Engineers is +/- 4%. Nissan states that its own internal tolerance guideline is XXXXXXX.

[3] Certain other vehicles manufactured by the defendants between 2004 and 2007 use one of two additional types of odometer systems, but the parties' briefs do not focus on the details of

operation of these odometer systems are undisputed.

A TSS system measures wheel rotation by measuring the number of revolutions of the transmission output shaft. The output shaft is the component that ultimately drives the wheels – as it revolves, the wheels revolve. The output shaft features a worm gear that is mated with a pinion gear, and as the worm gear turns, the pinion gear turns in a perpendicular direction. The overall result is that the pinion gear turns when the car's wheels turn.

A speed sensor is attached to the pinion gear, and it generates an electrical pulse each time a tooth on the pinion gear passes. Thus, the number of pulses generated by the speed sensor depends directly on the number of teeth in the pinion gear; an increase in the number of gear teeth results in more pulses. The sensor sends the pulses via a wire to the Combi-meter, which is an electronic component in the vehicle's dashboard that is manufactured by a third party. The Combi-meter contains the odometer display, as well as the displays for the speedometer and other dashboard instruments. It records one kilometer for every 5,096 electrical pulses it receives from the speed sensor.

More advanced vehicles use the ABS CAN system. Rather than relying on a pinion gear, an ABS CAN system uses the wheel-speed information generated by the anti-lock braking system to measure mileage. In these vehicles, the inside of each wheel contains a tone wheel, which is a small circular disc with a number of teeth cut into the perimeter. A wheel-speed sensor monitors the rotation of the tone wheel. Each time a tooth passes, the sensor sends an electrical pulse to the ABS controller, which averages the data from the four wheels and

---

these systems.
3

Case 3:08-md-01921   Document 121   Filed 09/28/10   Page 3 of 17 PageID #: 2802

calculates the speed of the vehicle. The controller then periodically sends a "speed message" to, among other components, the Combi-meter.

The Combi-meter converts the vehicle speed to distance traveled. In doing so, it uses a number called an "A constant," which accounts for certain inaccuracies introduced by the ABS controller. To calculate wheel speed, the ABS controller uses a tire circumference figure that, by necessity, is set by engineers early in the car's design process. If the tire circumference of the final vehicle is different from the earlier circumference figure used in the ABS controller, the engineers account for this by changing the A constant in the Combi-meter.

In a hybrid system, the vehicle measures speed as in an ABS CAN system, but it has a Combi-meter that was designed to read electrical pulses generated by a TSS system. In these cars, the speed message from the ABS controller is sent to a component called an integrated amplifier, which converts the speed message into electrical pulses that can be read by the older Combi-meter.

The plaintiffs claim that the defendants have designed their odometers to purposely over-register mileage by one of two ways: (1) in TSS systems, by using a pinion gear with an inappropriate number of teeth; and (2) in ABS CAN or hybrid systems, by using an inaccurate A constant. (Docket No. 98 at 10-11.)

## ANALYSIS

The defendants have filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, arguing that the Odometer Act does not apply here.

**I.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.  Federal Odometer Act

In the instant motion, the defendants have challenged the validity of the plaintiffs' claims under the federal Odometer Act (the "Act"), which, broadly speaking, aims to prevent odometer tampering. The defendants do not address the plaintiffs' state-law claims.

5

The Act defines an "odometer" as "an instrument for measuring and recording the distance a motor vehicle is driven." 49 U.S.C. § 32702(5). Section 32703, which is titled "Preventing tampering," prohibits certain activities. Subsection 1 provides that a person may not:

> advertise for sale, sell, use, install, or have installed, a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer[.]

*Id.* § 32703(1). Subsection 2 makes it illegal to "disconnect, reset, [or] alter . . . an odometer of a motor vehicle intending to change the mileage registered by the odometer." *Id.* § 32703(2).

The instant dispute hinges on three main issues: (1) what exactly constitutes an "odometer" for the purposes of the Act; (2) whether odometer components that are designed and installed by the defendants can violate the Act; and (3) whether the defendants have "altered" the odometers. Resolution of these questions will require the court to construe the statute's terms.

The Sixth Circuit recently explained the process of interpreting a federal statute:

> [I]n all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used. A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.

*Franklin v. Kellogg Co.*, No. 09-5880, 2010 U.S. App. LEXIS 18134, at *20-21 (6th Cir. Tenn. Aug. 31, 2010) (citations and quotation marks omitted) (alterations in original). "A word's

6

Case 3:08-md-01921   Document 121   Filed 09/28/10   Page 6 of 17 PageID #: 2805

ordinary meaning is often determined by reference to dictionaries." *Terrell v. United States*, 564 F.3d 442, 451 (6th Cir. 2009).

### A. Definition of "Odometer"

As an initial matter, the parties disagree as to what constitutes an "odometer." The plaintiffs argue that the odometer is simply "the instrument on the instrument panel" (Docket No. 98 at 11-16), while the defendants argue that the odometer consists of all the components used to measure the vehicle's mileage (Docket No. 86 at 17-22).

The defendants have the better argument. When a federal statute defines a term, that definition "must govern the resolution of [the] case." *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 346 (6th Cir. 2004). Here, the Act defines an odometer, in relevant part, as "an instrument for measuring and recording the distance a motor vehicle is driven." 49 U.S.C. § 32702(5). Thus, the odometer is (1) an instrument that (2) measures mileage and (3) records mileage. The statute does not further define these terms.

First, contrary to the plaintiffs' argument (*see* Docket No. 98 at 11-13), nothing prevents an instrument from being a system of mechanical components. The relevant dictionary definitions of "instrument" are "a device for measuring the present value of a quantity under observation" and "a mechanical or electronic measuring device, esp. one used in navigation."[4] Random House Webster's Unabridged Dictionary ("Webster's") 988 (2d ed. 1998). "Device," in turn, is defined as "a thing made for a particular purpose; an invention or contrivance, esp. a

---

[4] The plaintiffs quote substantially similar definitions from the Merriam-Webster Online Dictionary. (Docket No. 98 at 12.)

mechanical or electrical one." *Id.* at 543. It is clear that a device may consist of several component parts; indeed, a device can be made up of smaller devices. For example, as the defendants point out, a mechanical clock is an instrument used for measuring time, and it is indisputably a system of components, such as hands, gears, and springs. (*See* Docket No. 107 at 5.)

Second, the instrument must, in fact, be able to "measur[e] . . . the distance a motor vehicle is driven." *See* 49 U.S.C. § 32702(5). The odometer display, or the Combi-meter, alone is not capable of measuring mileage. The relevant definition of "measure" is "to ascertain the extent, dimensions, quantity, capacity, etc., of [something]."[5] Webster's at 1192. Each of the odometer systems at issue here measures mileage by monitoring how many times the car's wheels have turned, and the Combi-meter necessarily relies on information that is gathered by other components. In the TSS system, these components include the worm and pinion gears and the speed sensor, which combine to create electrical impulses that are sent to the Combi-meter. In the ABS CAN system, these include the tone wheels, wheel-speed sensors, and ABS controller, which combine to create the speed message sent to the Combi-meter. Each of these components exists, at least in part, for the purpose of measuring wheel revolutions, and thus for the purpose of measuring distance. Without the data from these components, the dashboard Combi-meter would be non-functional.

---

[5] To support their argument, the plaintiffs use an irrelevant definition of "measure": "'to allot or apportion in measured amounts <measure out in three cups>.'" (Docket No. 98 at 12.) An odometer, of course, does not allot or apportion distance – the odometer does not control the distance that the car travels, so it does not parcel out or distribute the distance. Instead, the odometer ascertains the distance traveled.

Thus, the "odometer" that the Act regulates is the entire odometer system, including the above-mentioned components; it is not solely the odometer display on the dashboard. The plaintiffs argue that various Nissan consumer and engineering manuals refer to the odometer display as the "odometer," and that, in common usage, "odometer" refers to the odometer display. (Docket No. 98 at 13-14). But this usage is not consistent with the definition contained in the Act. The court is "not at liberty to put [its] gloss on the definition that Congress provided by looking to the generally accepted meaning of the defined term." *Wells*, 371 F.3d at 346 (citing *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 698 n.10 (1995)).

Because the plaintiffs do not dispute the defendants' evidence regarding how the odometers at issue operate, there is no issue of material fact as to what constitutes the "odometers" in this case.

**B.     Section 32703(1)**

The definition of "odometer" is important because the Act makes it illegal to "install . . . a device that makes an odometer of a motor vehicle register a mileage different from the mileage the vehicle was driven, as registered by the odometer within the designed tolerance of the manufacturer of the odometer." 49 U.S.C. § 32703(1).

The defendants argue that an odometer, as designed by the manufacturer, cannot itself violate the Act. (Docket No. 86 at 25-26.) They are correct, because the Act limits its prohibition to devices that cause the odometer to register mileage outside "the designed tolerance of the manufacturer of the odometer." Because "odometer" refers to the entire odometer

9

system, Nissan is the relevant "manufacturer" here.

It is necessary for the court to construe the term "designed tolerance," which the Act does not define. The relevant dictionary definition of "tolerance" is "the permissible range of variation in a dimension of an object." Webster's at 1992; *see also* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/tolerance (defining "tolerance" as "the allowable deviation from a standard"). The "tolerance" referred to in the statute is the variation or deviation between (a) the actual distance that the vehicle has traveled and (b) the mileage that the odometer measures and records. "Designed" is defined as "made or done intentionally; intended; planned." Webster's at 539. Thus, the "designed tolerance" is the tolerance that the manufacturer intended to build into the odometer system.[6]

This means that a manufacturer that intentionally designs and builds an odometer to over-register mileage does not, in doing so, violate Subsection 1.[7] In that case, the inaccuracy in the odometer's measurements will, by definition, fall within the manufacturer's designed tolerance. The plaintiffs argue that the court should liberally construe the Act to apply to such fraud, but even the most liberal construction cannot overcome the plain language of the statute.

Here, the plaintiffs claim that the defendants have purposely designed the odometers –

---

[6] The relevant tolerance is not, as the plaintiffs suggest, the error rate of the Combi-meter. (*See* Docket No. 98 at 1.) The Combi-meter is only one component of the odometer system; the relevant tolerance is the tolerance of the entire "odometer."

[7] It is unnecessary for the court to address the defendants' alternative argument that a "device" cannot, in the abstract, be a part of the "odometer." (*See* Docket No. 86 at 24-25.)

10

either by choosing to use a certain pinion gear or a certain A constant[8] – to measure and record longer distances than the car has actually traveled.[9] But these "devices" are all part of the odometer system, as designed. Nissan's decisions regarding pinion gears and A constants took place during the design process, and the vehicles were manufactured to these specifications. Any mileage inaccuracies that these design decisions have caused are, by definition, within the "designed tolerance" of the odometers.[10]

This construction of the statute, which is compelled by the Act's plain language, is not contrary to the purpose of the Act. The Act explicitly explains that Congress's twin purposes were "to prohibit tampering with motor vehicle odometers" and "to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers."[11] 49 U.S.C. §

---

[8] The plaintiffs' brief quotes their expert's report: "'[T]he pinion gear is a device, and the improper selection of its number of gear teeth is tampering.'" (Docket No. 98 at 18 (quoting Docket No. 98, Ex. 11 at 20).) Furthermore, "'[The ABS CAN systems] includ[e] a built-in correction function that Nissan calls the 'A constant.' . . . Nissan has the capability to bias odometers, using the A constant 'device' . . . .'" (*Id.* at 21 (quoting Docket No. 98, Ex 12 ¶ 27).)

[9] Because of the relatively narrow scope of the defendants' motion, the parties do not make arguments regarding the actual, measured accuracy of the odometers. The court notes that the plaintiff's expert tested 11 Nissan Altimas from various model years and found that nine over-registered mileage by 2-4%, while two under-registered mileage by 1-2%. (Docket No. 98, Ex. 11 at 4.)

[10] This is consistent with the court's previous decision on the defendants' Motion to Dismiss. In that Memorandum, the court found that "the question of whether the device alleged is, in fact, distinct from the odometer itself is one of fact not appropriate for resolution here." (Docket No. 54 at 11.) The court then allowed the plaintiffs' Odometer Act claim to go forward because it found that the plaintiffs had sufficiently "alleged post-manufacture tampering." (*Id.* at 13.) In fact, the plaintiffs themselves specifically stated in their brief that "they 'do not complain of the odometer design itself.'" (*Id.* (quoting Docket No. 42 at 10).)

[11] It is true that Congress made a finding of fact that car buyers "are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle." 49 U.S.C. §

11

32701(b)(1)-(2). Imposing liability on auto manufacturers for faulty odometer design does not further either of these purposes. Congress sought to prevent odometer tampering by third parties, such as the practice of rolling back odometers to reflect a lower mileage, because of the effects such tampering had on the used car market. *See* S. Rep. 92-413, at 3 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3960, 3962 ("By prohibiting the disconnecting or turning back of odometers, [the Odometer Act] would establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses."); *see also* 49 U.S.C. § 32705(a) (requiring car sellers to disclose the actual mileage of the vehicle). Indeed, "tampering" denotes changes made to an already existing item.[12] An odometer that has been designed and manufactured to over-register mileage has not, in any normal sense of the word, been tampered with. Simply put, the Act was not aimed at ensuring that newly manufactured odometers are accurate.

Furthermore, even if the Odometer Act were ambiguous, the court would defer to the construction of the statute by the federal agency charged with enforcing it. *Carter*, 553 F.3d at 987. The National Highway Traffic Safety Administration ("NHTSA") is responsible for administering and enforcing the Odometer Act. 49 C.F.R. § 1.4(e)(5) (2010); *see also* 49 U.S.C. § 32709(2). In 1978, the agency promulgated a rule setting odometer accuracy requirements at +/- 4% and requiring odometers to be tamper-resistant. 43 Fed. Reg. 10919, 10919-20 (1978). But these regulations were promulgated pursuant to the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 15 U.S.C. § 1381 *et seq.* – not the Odometer Act. 43 Fed. Reg. at

---

32701(a)(2). But this does not alter the two explicit *purposes* of the Act listed in § 32701(b).

[12] The relevant dictionary definitions of "tamper" are "to make changes in something" and "to meddle, esp. for the purpose of altering, damaging, or misusing." Webster's at 1940.

12

10919.

The agency rescinded the regulation in its entirety several years later, because the regulation did not have a safety benefit, as required by the Safety Act. 47 Fed. Reg. 7250, 7251-52 (1982). The state of Wisconsin opposed the change, arguing "that in the statement of purpose . . . of the [Odometer Act], Congress said that an accurate odometer can assist a purchaser in determining a vehicle's safety." *Id.* at 7251. The NHTSA rejected this argument, because "[t]he purpose of the [Odometer] Act is to provide purchasers with legal remedies to pursue against persons who tamper with odometers. The Act [does not] authorize[] the issuance of equipment standards to accomplish that purpose . . . ." *Id.* This suggests that the NHTSA's interpretation of the Odometer Act is that the Act does not regulate the accuracy of new odometers.[13]

Only a handful of district courts have addressed whether, or how, § 32703(1) applies to vehicle manufacturers. One case, *Baxter v. Kawasaki Motors Corp.*, No. 07 C 6745, 2008 U.S. Dist. LEXIS 111559 (N.D. Ill. July 17, 2008), reached the same conclusion as this court.[14] In *Baxter*, the plaintiffs alleged that the defendant motorcycle manufacturer had purposely designed its odometers to over-register mileage. The court granted the defendant's motion to dismiss,

---

[13] The defendants have attached the affidavit of William Boehly, a former NHTSA administrator, as evidence that the NHTSA did not believe that the Odometer Act covers the design of odometers. (*See* Docket No. 89, Ex. 1.) The plaintiffs challenge Boehly's qualification as an expert witness and have filed a Motion to Disqualify him. (Docket No. 101.) The court finds that consideration of Boehly's testimony is unnecessary, however, because the NHTSA documents published in the Federal Register speak for themselves. In any event, because the statutory language is clear, the court need not resort to the NHTSA's interpretation of the Act. Accordingly, the plaintiffs' motion will be denied as moot.

[14] Although this court, in its Memorandum regarding the defendants' Motion to Dismiss, criticized certain parts of *Baxter*'s reasoning (*see* Docket No. 56 at 12-13), it did not criticize the *Baxter* court's construction of the Odometer Act.

13

holding that "the actual language of § 32703(1) and the expressly stated statutory purposes are limited to preventing tampering with already manufactured odometers. It is inconsistent with the language of § 32703(1) to apply it to odometers that are defectively manufactured that give inaccurate readings . . . ." *Id.* at *16.

In contrast, the plaintiffs cite *Vasilas v. Subaru of America, Inc.*, No. 07 CV 2374, 2009 U.S. Dist. LEXIS 71615 (S.D.N.Y. Aug. 5, 2009). There, the court looked to dictionary definitions to construe "designed tolerance" and concluded that "an odometer's 'designed tolerance' is the range of accuracy that the designed instrument is expected to be capable of achieving." *Id.* at *12-13. The court went on to state, however, that "[d]eliberately manufacturing odometers to inaccurately register mileage beyond the design tolerance, in order to defraud consumers as to the distance traveled by their motor vehicles would . . . violate the Act."[15] *Id.* at *14 n.2. It explained that "[a]n odometer that is made to deliberately not work for its specific capable purpose is not designed improperly; it is manufactured improperly." *Id.*

This court finds the reasoning in *Vasilas* to be unpersuasive. The distinction between

---

[15] The plaintiffs also cite *Vaughn v. American Honda Motor Co., Ltd.*, No. 2:04-cv-00146 (E.D. Tex. Mar. 31, 2005), which refused to grant the defendant's motion to dismiss because the plaintiffs alleged "that [the defendant] knowingly installed a software component that would cause the odometer to display an inaccurate mileage and did so with the intent to defraud customers out of a portion of their warranty." *Id.* at 4. But *Vaughn* contains no detailed analysis of the Act, and it appears that the court applied a relatively lax motion to dismiss standard. The defendant argued that the Act was not intended to reach claims regarding the design of odometers, and the court conceded that the defendant's "arguments [were] not without some force." *Id.* In a subsequent decision approving a class settlement, the court noted that "the plaintiffs' success on the merits was highly uncertain," in part because "they would have had to apply the statute to a manufacturer's decision to select a particular odometer and set its tolerance." *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 747 (E.D. Tex. 2007).

14

manufacturing and design is illusory in this context; an odometer that is *manufactured* is built to the manufacturer's chosen *design* specifications. If the odometer over-registers mileage because the manufacturer purposely built it that way, then the odometer has been designed to over-register. Thus, an odometer cannot be "[d]eliberately manufactur[ed] . . . to inaccurately register mileage beyond the design[ed] tolerance," because the magnitude of the intentional inaccuracy effectively defines the designed tolerance.

The plaintiffs next cite *Womack v. Nissan North America, Inc.*, 550 F.Supp. 2d 630 (E.D. Tex. 2007). In that case, which was ultimately transferred to this court as a part of the instant MDL, the court denied the defendants' motion to dismiss and stated that a question of fact existed as to "the permissible magnitude of the 'designed tolerance'" of the odometers. *Id.* at 637. But this is not consistent with the plain language of the Act – the statute does not purport to limit the permissible magnitude of the designed tolerance. The court cannot, from whole cloth, create a requirement that has no basis in the text of the statute.

Certainly, Congress could pass a law regulating the accuracy of odometers on new cars, but it did not do so in the Odometer Act. Because the plaintiffs have essentially claimed that their odometers were fraudulently designed, § 32703(1) is inapplicable, and the court will dismiss the claim. It is worth noting that this does not leave the plaintiffs without a remedy; indeed, their numerous state-law claims remain. *Cf. Bodine v. Graco, Inc.*, 533 F.3d 1145, 1154 (9th Cir. 2008) ("There is a plausible reason why Congress would want to keep the Odometer Act narrow: the availability of state-law remedies.").

C. **Section 32703(2)**

Case 3:08-md-01921　Document 121　Filed 09/28/10　Page 15 of 17 PageID #: 2814

Section 32703(2) of the Act provides that a person may not "alter . . . an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703. In its previous Memorandum regarding the defendants' Motion to Dismiss, the court stated that it understood that the plaintiffs did not claim a violation of this subsection. (Docket No. 54 at 8 n.4.) Nevertheless, the plaintiffs now argue that Nissan has altered the odometers post-manufacture. (Docket No. 98 at 21-24.)

But, as discussed above, the evidence shows that, at most, Nissan designed and manufactured intentionally inaccurate odometers. The Act does not define "alter," so the court will again turn to the dictionary definition: "to make different in some particular . . .; modify." Webster's at 60. This definition presupposes that the object being altered already exists in some initial state. Thus, by its plain terms, the statute applies only to changes made to an odometer after the odometer has been manufactured. *Baxter*, 2008 U.S. Dist. LEXIS 111559, at *18 ("[T]he language of § 32703(2) . . . necessarily requires a change from the odometer's original condition."); *see also Francesconi v. Kardon Chevrolet, Inc.*, 888 F.2d 18, 20 (3d Cir. 1989) ("The Act is not violated unless the odometer in question has undergone a 'change.' The record contains no evidence of a change due to . . . physical tampering . . . ."). Choosing a certain pinion gear or A constant when designing the odometer does not qualify as an alteration of the odometer. Because there is no evidence that Nissan has made any post-manufacture alterations to the odometers, § 32703(2) does not apply.

The plaintiffs again cite *Vasilas*, which held that "[u]nlawful altering is not limited solely to changes made to an odometer after it becomes a completed product" and that "prohibited

16

[alteration] may be accomplished even prior to assembly." *Vasilas*, 2009 U.S. Dist. LEXIS 71615, at *16-17. In support, the court cited a 1916 Supreme Court case interpreting a food adulteration statute, which "would be rendered absurd if construed to apply only to finished products because it would allow manufacturers to add injurious components to the product, provided they are part of the formula." *Id.* at *17 (citing *United States v. Forty Barrels & Twenty Kegs of Coca Cola*, 241 U.S. 265, 279-80 (1916)). But that case is entirely inapposite – the Odometer Act explicitly speaks in terms of *alteration*, not adulteration. The statute is concerned exclusively with changes to an existing odometer, not with the odometer's initial state. The *Vasilas* court's analogy to food adulteration would be closer if § 32703(2) prohibited persons from manufacturing inaccurate or otherwise flawed odometers. It does not.

It seems self-evident that a manufacturer cannot alter an odometer that has not yet been built, and there is no evidence that the defendants changed the odometer systems after they were manufactured. Accordingly, the court will dismiss the plaintiffs' § 32703(2) claim.

## CONCLUSION

For all of the reasons discussed above, the court will grant the defendants' Motion for Summary Judgment, and the plaintiffs' claims under the Odometer Act will be dismissed. The court will also deny the plaintiffs' Motion to Disqualify as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

17

Case 3:08-md-01921   Document 121   Filed 09/28/10   Page 17 of 17 PageID #: 2816